### FIRST TRUST & SAVINGS BANK v. ST. LOUIS COKE & IRON CO. et al.

### ST. LOUIS COKE & IRON CORPORATION v. ALLEN.

Circuit Court of Appeals, Seventh Circuit.
November 28, 1928.

No. 4031.

Chilton P. Wilson, of Chicago, Ill. (Peter B. Nelson, of Chicago, Ill., on the brief), for appellant.

Marks Alexander, of Springfield, Ill., for appellee.

Before EVANS, PAGE, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The First Trust & Savings Bank, as trustee, brought suit to foreclose a mortgage on the property of the St. Louis Coke & Iron Company. This mortgage was executed to secure bonds to the amount of $10,000,000, of which substantially $6,800,000 were issued. The mortgage provided that a receiver might be appointed pending foreclosure proceedings to take possession and control of the assets of the mortgagor, and to collect the income and proceeds of the business carried on by it. A receiver was appointed, and the appellee was appointed special master in the cause. A decree of foreclosure was entered, finding there was due $7,335,454.67, and directing that the property covered by the mortgage, together with the money and property in possession of the receiver, should be sold. The decree provided that in addition to the sum bid, and as part of the purchase price, the purchaser should pay the compensation to be allowed to the special master.

The sale was made to the St. Louis Coke & Iron Corporation, which seems to have been organized for the purpose by the usual reorganization methods. The sale was made for a reported consideration of $3,000,000, but it appears to have been paid by turning over bonds and creditors' claims. If any real money was paid the fact does not appear. The various attorneys in the foreclosure and reorganization proceedings were paid about $100,000.

The master was appointed August 6, 1925, and his claim is for services begun on that date, and ending June 14, 1927—a little less than two years. During that period he claims that he employed 60 full days in his duties as such master, and that on 54 other days he was employed a part of the time each day in correspondence in the case, in checking claims, and in the keeping of office records. Only two contested matters came before him. One was heard and settled in a part of an afternoon; the other occupied several days in hearing, but does not appear to have been difficult or to have required unusual knowledge or skill.

The court allowed the special master $16,500. The appellant, the purchaser at the sale, complains that this amount is excessive and unreasonably large.

The federal equity rule authorizing the appointment of standing and special masters provides: "The compensation to be allowed to every master shall be fixed by the District Court, in its discretion, having regard to all the circumstances thereof."

Courts differ widely as to what circum-

stances are to be regarded and the consideration to be given to those circumstances. Some hold that the time consumed is the most weighty consideration; while others hold that it is the only thing to be considered. Some hold that the amount involved is the principal matter to be considered; others, that while this is an important consideration in estimating attorneys' fees, it has no place in fixing the compensation of masters. Some courts use judicial salaries as a guide; while others consider these notoriously too low to afford a fair comparison. It seems that the skill and knowledge required to perform the duties are important considerations. The Supreme Court, in Newton v. Consolidated Gas Co., 259 U. S. 101, 42 S. Ct. 438, 66 L. Ed. 844, said: "The value of a capable master's services cannot be determined with mathematical accuracy; and estimates will vary, of course, according to the standard adopted. He occupies a position of honor, responsibility and trust; the court looks to him to execute its decrees thoroughly, accurately, impartially and in full response to the confidence extended; he should be adequately remunerated for actual work done, time employed and the responsibility assumed. His compensation should be liberal, but not exorbitant. The rights of those who ultimately pay must be carefully protected; and while salaries prescribed by law for judicial officers performing similar duties are valuable guides, a higher rate of compensation is generally necessary in order to secure ability and experience in an exacting and temporary employment which often seriously interferes with other undertakings."

We think in the case at bar that the District Court put too much stress on the amount involved and the amounts paid to the attorneys. The attorneys' fees were paid voluntarily. If the parties paying wish to be liberal, that is their own affair; they are paying out their own money. The amount involved in this case was largely on paper and, if considered, should not have been given great weight.

The Supreme Court, in the disbarment proceedings which grew out of the Newton Case, said: "We were desirous of making it clear by our action that the judges of the courts, in fixing allowances for services to court officers, should be most careful, and that vicarious generosity in such a matter could receive no countenance." In re Gilbert, 276 U. S. 294, 296, 48 S. Ct. 309, 310 (72 L. Ed. 580).

If we are to regard this suggestion by the Supreme Court, we cannot be generous with other people's money. Having regard to all the circumstances—the amount involved, the time employed, the responsibility, the character of the work, the difficulty of it, the skill and knowledge required, and the compensation paid under like circumstances in other cases—we think that $7,500 would be a liberal allowance for the services of the master in this case.

Reversed and remanded, with direction to allow the master $7,500 for all his services rendered and to be rendered.